UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
:
:
MODELLBAHN OTT HOBBIES, INC., D/B/A :
SUPREME HOBBIES, :
:
              Plaintiff, :
:
:
       v. :  No. 20-cv-03526-LLS
:
:
VELCRO USA, INC.; AMERICAN TOMBOW, :
INC.; RUBIK'S BRAND, LTD.; MATTEL, INC.; :
KOALA TOOLS, LLC; YELLOW BRAND :
PROTECTION, INC.; AND INCOPRO LIMITED, :
:
              Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**<u>MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM OF
DEFENDANTS INCOPRO LIMITED AND MATTEL, INC.</u>**

BALLARD SPAHR LLP

Joseph Slaughter
1675 Broadway, 19th Floor
New York, NY 10019
Tel.: (212) 223-0200
Fax: (212) 223-1942
slaughterj@ballardspahr.com

Paul Safier (*pro hac vice* forthcoming)
1735 Market St., 51st Floor
Philadelphia, PA 19103
Tel.: (215) 665-8500
Fax: (215) 864-8999
safierp@ballardspahr.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .....................................................................................1

STATEMENT OF FACTS ..............................................................................................2

ARGUMENT ...................................................................................................................3

I.      The May 7, 2019 Communication Is Not Actionable ..........................................3

II.     Any Claims Based On Communications Preceding The May 7, 2019 Communication Are Barred By The Statute Of Limitations ................................4

III.    Plaintiff's Defamation Claims Fail On The Additional Ground That Any Take Down Notice To Amazon Was Subject To A Qualified Privilege, And Plaintiff Has Failed To Plead Facts That Would Permit It To Overcome That Privilege ................................................................................................................8

        A.     The Communication Is Subject to the Litigation Privilege .....................8

        B.     The Communication Is Subject to the "Common Interest" Privilege ....10

        C.     Plaintiff Has Not Alleged Facts Capable of Overcoming Either Qualified Privilege ...................................................................................11

III.    Plaintiff's Tortious Interference Claim Fails On Additional Grounds ..............12

CONCLUSION ..............................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3P-733, LLC v. Davis*,
   2019 NY Slip Op 30946(U) (Sup. Ct. N.Y. Cty. 2019) ............................................................ 9

*Abshier v. Sunset Recordings, Inc.*,
   2014 U.S. Dist. LEXIS 119742 (S.D.N.Y. Aug. 5, 2014) ..................................................... 6, 7

*Arista Records, Inc. v. MP3Board, Inc.*,
   2002 U.S. Dist. LEXIS 16165 (S.D.N.Y. Aug. 28, 2002) ...................................................... 13

*Beter v. Murdoch*,
   2018 U.S. Dist. LEXIS 107448 (S.D.N.Y. June 22, 2018) ....................................................... 6

*Chandok v. Klessig*,
   632 F.3d 803 (2d Cir. 2011) ...................................................................................................... 3

*Chao v. Mt. Sinai Hospital*,
   476 F. App'x 892 (2d Cir. 2012) ....................................................................................... 6, 7, 12

*Fleming v. Laakso*,
   2019 U.S. Dist. LEXIS 19565 (S.D.N.Y. Feb. 5, 2019) .................................................. 8, 11, 12

*Foster v. Churchill*,
   87 N.Y.2d 744 (1996) .............................................................................................................. 10

*Front, Inc. v. Khalil*,
   24 N.Y.3d 713 (2015) ..................................................................................................... 8, 9, 11

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009) ................................................................................ 11, 12

*Hanly v. Powell Goldstein, LLP*,
   290 F. App'x 435 (2d Cir. 2008) ............................................................................................... 5

*Hard 2 Find Accessories, Inc. v. Amazon.Com, Inc.*,
   2014 U.S. Dist. LEXIS 160980 (W.D. Wash. Nov. 17, 2014) .................................................. 9

*Kalyanaram v. American Association of University Professors at N.Y. Institute of
   Technology, Inc.*,
   742 F.3d 42 (2d Cir. 2014) ........................................................................................................ 5

*Kamdem-Ouaffo v. Pepsico, Inc.*,
   160 F. Supp. 3d 553 (S.D.N.Y. 2016) ....................................................................................... 5

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)..........................................................................................4, 12, 14

*L.Y.E. Diamonds Ltd. v. Gemological Institute of America, Inc.*,
   2017 NY Slip Op 32576(U) (Sup. Ct. N.Y. Cty. 2017)...........................................................10

*Liberman v. Gelstein*,
   80 N.Y.2d 429 (1992) ...........................................................................................................10

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
   2017 U.S. Dist. LEXIS 64854 (S.D.N.Y. Apr. 7, 2017).................................................9, 11, 12

*McKenzie v. Dow Jones & Co.*,
   355 F. App'x 533 (2d Cir. 2009) ............................................................................................5

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
   232 F. Supp. 2d 220 (S.D.N.Y. 2002).....................................................................................13

*Pedraglio Loli v. Citibank, Inc.*,
   1997 U.S. Dist. LEXIS 20070 (S.D.N.Y. Dec. 18, 1997) ......................................................6, 7

*Ramsaran v. Abraham*,
   2017 U.S. Dist. LEXIS 47751 (S.D.N.Y. Mar. 30, 2017) .......................................................12

*Taboola, Inc. v. Ezoic Inc.*,
   2020 U.S. Dist. LEXIS 67934 (S.D.N.Y. Apr. 17, 2020).........................................................14

*TufAmerica, Inc. v. Diamond*,
   968 F. Supp. 2d 588 (S.D.N.Y. 2013).......................................................................................4

*Verbena Products, LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc.*,
   2020 U.S. Dist. LEXIS 35869 (S.D. Fla. Feb. 28, 2020).........................................................9

**Other Authorities**

N.Y. C.P.L.R. 215(3) ........................................................................................................................5

# PRELIMINARY STATEMENT

Plaintiff Modellbahn Ott Hobbies, Inc., d/b/a Supreme Hobbies ("Plaintiff") brings this action against several defendants, including, as relevant here, Incopro Limited ("Incopro")[1] and its client, Mattel Inc. (together, the "Incopro Defendants"). The crux of Plaintiff's Amended Complaint (Dkt. No. 13) is that defendants—including the Incopro Defendants—submitted various (allegedly false) notices to Amazon.com that Plaintiff was selling counterfeit versions of defendants' products on Amazon's website, and that these notices caused Amazon to terminate the contract under which Plaintiff sold goods on Amazon's platform. Based on those allegations, Plaintiff asserts claims for defamation, defamation per se, and tortious interference.

The lawsuit should be dismissed in its entirety as to the Incopro Defendants for each of the following reasons:

1. The purported May 7, 2019 communication on which Plaintiff bases those claims is an email exchange between Plaintiff and Amazon, not (as Plaintiff alleges) between the Incopro Defendants and Amazon, and it cannot serve as the basis for any claim against Incopro and/or Mattel.

2. To the extent that Plaintiff is really complaining about a communication to Amazon that preceded the May 7, 2019 email (as appears to be the case), Plaintiff's claims are barred by the one-year statute of limitations that applies to defamation claims, including, as relevant here, defamation claims dressed up as tortious interference claims.

---

[1] Plaintiff sued the wrong Incopro entity. It is Incopro, Inc., not Incopro Limited, that monitors and enforces the intellectual property rights of clients like Mattel, Inc. ("Mattel"). Nonetheless, because Plaintiff's claims fail even if directed against the proper entity, it is not necessary to address that issue at this stage.

3. The Incopro Defendants' alleged complaint to Amazon about counterfeit Mattel merchandise being sold on Amazon's platform is protected from defamation liability by the qualified privileges that apply to pre-litigation communications and to communications subject to a common interest, and Plaintiff has not pleaded any facts capable of overcoming those privileges.

4. Plaintiff's tortious interference claim fails on the additional grounds that Plaintiff has not adequately alleged either that the Incopro Defendants acted without justification in complaining to Amazon, or that the Incopro Defendants' complaint caused Amazon to breach a contract with Plaintiff.

Accordingly, the Incopro Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety as to them pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim.

## STATEMENT OF FACTS

According to its Amended Complaint, Plaintiff is a Pennsylvania corporation that, pursuant to a contract with Amazon.com, sold goods on Amazon's website. Amended Complaint ("Am. Compl.") ¶¶ 13-15. Plaintiff alleges that it lawfully acquired all of the products it sold through Amazon, and that it never repackaged or modified any of those products. *Id*. ¶¶ 17, 19. Nonetheless, according to Plaintiff, over an approximately 18-month period, the different defendants in this case submitted five separate complaints to Amazon alleging that Plaintiff was selling counterfeit versions of defendants' trademarked goods. *Id*. ¶¶ 22-26. Plaintiff alleges that, as a result of those complaints, "Amazon terminated its contract with the Plaintiff." *Id.* ¶ 27.

As to the Incopro Defendants in particular, the Amended Complaint alleges that Incopro, acting on behalf of Mattel, sent one of the five counterfeiting complaints to Amazon. Specifically, Plaintiff alleges that "[o]n May 7, 2019, Defendant Mattel's authorized agent, IncoPro, published intellectual property complaints with Amazon against Plaintiff falsely alleging the products it was selling were counterfeit." *Id.* ¶ 26. Based on that allegation alone, Plaintiff asserts claims against the Incopro Defendants for defamation (Count II), defamation per se (Count III), and tortious interference with contract (Count I). *Id.* ¶¶ 37-71.

## ARGUMENT

I. **The May 7, 2019 Communication Is Not Actionable.**

According to the Amended Complaint, Plaintiff's claims against the Incopro Defendants stem from a communication Incopro allegedly sent to Amazon on May 7, 2019 on behalf of Mattel. Am. Compl. ¶ 26. Plaintiff has attached to its Amended Complaint an exhibit that it claims constitutes the offending communication. *Id.*; *see also* Exhibit F, Dkt. No. 13-6.[2] Exhibit F, however, is not a communication between Incopro and Amazon at all—rather, it appears to be a communication from Amazon to Plaintiff indicating that some sort of appeal made by Plaintiff about a communication from Incopro had been rejected. *Id.* Exhibit F, therefore, cannot form the basis of a defamation claim against the Incopro Defendants because it is not a statement made by them at all, let alone a defamatory statement by them. *See Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011) ("New York law allows a plaintiff to recover for defamation by proving that the defendant published to a third party a defamatory statement of fact that was

---

[2] The Amended Complaint identifies Exhibit E as the allegedly defamatory communication from Incopro to Amazon. Am. Compl. ¶ 26. However, this appears to be a typographical error. For purposes of this motion, the Incopro Defendants assume that Plaintiff intended to associate them with Exhibit F.

3

false, was made with the applicable level of fault, and . . . was not protected by privilege."). Nor, on its face, does Exhibit F support a claim for tortious interference with contract against the Incopro Defendants. Among other things, the email contains no facts to indicate that the Incopro Defendants, without justification, intentionally induced Amazon to breach its contract with Plaintiff. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (setting forth elements of a tortious interference claim, including the "defendant's intentional procurement of the third-party's breach of the contract without justification").

Thus, to the extent Plaintiffs' claims against the Incopro Defendants are based on Exhibit F, those claims fail, regardless of how Plaintiff characterizes that communication in its Amended Complaint. That is because, where there is a discrepancy between the allegations in a complaint and an exhibit upon which those allegations are based, "the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013). Plaintiff's claims against the Incopro Defendants should, thus, be dismissed on the ground that the communication on which they are based is non-actionable on its face.

## II. Any Claims Based On Communications Preceding The May 7, 2019 Communication Are Barred By The Statute Of Limitations.

Notwithstanding that the Amended Complaint identifies Exhibit F as the offending communication, it appears Plaintiff's real issue is that it received Exhibit F as a result of some prior communication from Incopro to Amazon, presumably alleging that Plaintiff was selling counterfeit Mattel goods on Amazon's website. Even that generous construction of the Amended Complaint does not help Plaintiff, however. That is because claims based on any communication that occurred prior to May 7, 2019 are barred by the applicable statute of limitations.

4

Defamation claims under New York law are subject to a one-year statute of limitations. *See* N.Y. C.P.L.R. 215(3); *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009). A defamation claim accrues "when the alleged statements were first published" and a "later discovery of defamatory material does not toll the one-year statute of limitations." *Kamdem-Ouaffo v. Pepsico, Inc.*, 160 F. Supp. 3d 553, 571 (S.D.N.Y. 2016) (citations omitted), *aff'd*, 657 F. App'x 949 (Fed. Cir. 2016); *see also Hanly v. Powell Goldstein, LLP*, 290 F. App'x 435, 439 (2d Cir. 2008) ("New York courts consistently have declined to recognize a so-called 'discovery rule' for libel claims."). The initial Complaint in this action was filed on May 7, 2020, and Plaintiff conveniently alleges that Exhibit F is a communication from May 7, 2019—exactly one year prior to the filing. Notably, Exhibit F contains no date. But, even assuming that Plaintiff did receive it from Amazon on May 7, 2019, it is self-evident from the substance of Exhibit F that any offending communication from the Incopro Defendants to Amazon must have occurred prior to that date. Consequently, to the extent Plaintiff's defamation claims are premised on any such prior communication, they are barred by the applicable statute of limitations.

Indeed, Plaintiff well knows that it brought these claims too late. In an email dated May 13, 2020, Plaintiff's principal represented to Incopro that its "false claim has caused our Amazon account to be suspended ***since March 30, 2019***." *See* Decl. of Joseph Slaughter ("Slaughter Decl."), Ex. 1 (emphasis added).[3] In other words, Plaintiff acknowledged in the email that the occurrence its Amended Complaint attributes to the Incopro Defendants' offending statement—

---

[3] On a motion to dismiss, the Court may properly consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014). Exhibit 1 to the Slaughter Declaration, which is an email from Plaintiff (and, therefore, is in Plaintiff's possession), that relates to the specific subject matter of this action (and, therefore, relied upon by Plaintiff in bringing these allegations), fits precisely into this rubric.

5

namely, Plaintiff having its Amazon account suspended—occurred well prior to May 7, 2019. Thus, the statement itself must have occurred prior to that date as well, rendering Plaintiff's defamation claims barred by the statute of limitations.

This timing is equally fatal to Plaintiff's tortious interference claim. "The New York Courts have consistently ruled that a claim which is ostensibly based upon intentional torts of interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim and subject to the one-year limitations period under CPLR 215(3)." *Pedraglio Loli v. Citibank, Inc.*, 1997 U.S. Dist. LEXIS 20070, at *10 (S.D.N.Y. Dec. 18, 1997) (quoting *Lehtinen v. Bill Commc'ns, Inc.*, 1989 WL 38130, at *6 (S.D.N.Y. 1989)); *see also Abshier v. Sunset Recordings, Inc.*, 2014 U.S. Dist. LEXIS 119742, at *24-25 (S.D.N.Y. Aug. 5, 2014) (same). Specifically, "[w]hen a plaintiff's claims all involve the same allegedly false and defamatory statements, and all seek damages for injury to reputation, . . . regardless of the terms in which a cause of action may be cast, the one-year limitations period for libel and slander applies." *Beter v. Murdoch*, 2018 U.S. Dist. LEXIS 107448, at *19-20 (S.D.N.Y. June 22, 2018) (citations omitted); *see also Chao v. Mt. Sinai Hosp.*, 476 F. App'x 892, 896-97 (2d Cir. 2012) ("New York law considers claims sounding in tort to be defamation claims . . . where the causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation.") (quoting *Jain v. Sec. Indus. & Fin. Mkts. Ass'n*, 2009 U.S. Dist. LEXIS 91206 (S.D.N.Y. Sept. 28, 2009)).

This doctrine applies here. Plaintiff admits that its tortious interference claim is based on the exact same allegedly defamatory statements as are its defamation claims. Am. Compl. ¶ 41 ("By publishing the defamatory statements to Amazon as alleged herein, the Defendants intended to curtail, affect, or interrupt the working relationship of trust between Plaintiff and

Amazon."). Moreover, the Amended Complaint is clear that the gravamen of the injury Plaintiff claims is reputational. Plaintiff does not claim that the Incopro Defendants induced Amazon to breach its contract with Plaintiff, but simply that the allegedly false allegations levelled against Plaintiff caused Amazon to exercise its discretion to cease doing business with it. *Id*. ¶¶ 42-43. The obvious implication is that Amazon made this decision based on the effect of the allegedly defamatory statement on Plaintiff's reputation.

Courts routinely hold that, where, as here, a tortious interference claim is premised on the allegation that a defamatory statement caused third parties to stop doing business with the plaintiff, that claim is really a defamation claim and should be treated as such. *See, e.g.*, *Chao*, 476 F. App'x at 896-97 (tort claims based on allegation that false and defamatory statements caused plaintiff's employment to be terminated sounded in defamation, notwithstanding how they were pleaded); *Abshier*, 2014 U.S. Dist. LEXIS 119742, at *24-25 (dismissing tortious interference claim as untimely based on statute of limitations governing defamation claims where allegation was that defendants "posted defamatory information about him on a website, which caused unidentified persons or entities to end their business relations with him"); *Pedraglio Loli*, 1997 U.S. Dist. LEXIS 20070, at *10-11 (dismissing tortious interference claim as untimely based on statute of limitations governing defamation claims where plaintiff alleged that false accusation caused him to lose business).

In short, Plaintiff's claims each sounds in defamation. They should each be dismissed as untimely because each arises from a statement made more than a year before the lawsuit was filed.

**III. Plaintiff's Defamation Claims Fail On The Additional Ground That Any Take Down Notice To Amazon Was Subject To A Qualified Privilege, And Plaintiff Has Failed To Plead Facts That Would Permit It To Overcome That Privilege.**

Even if Plaintiff's claims were not barred by the statute of limitations, its defamation claims would still fail. That is because any communication from the Incopro Defendants to Amazon alleging that infringing material was being sold on Amazon's platform would be protected from defamation liability by two independent and well-established privileges: (1) the qualified privilege for pre-litigation communications, and (2) the qualified "common interest" privilege. Moreover, "[b]ecause the absence of an applicable privilege is an element of the cause of action in New York, a plaintiff must affirmatively allege that the defamatory statement was not privileged." *Fleming v. Laakso*, 2019 U.S. Dist. LEXIS 19565, at *24 (S.D.N.Y. Feb. 5, 2019). Because, as explained below, both privileges apply to any take down notice to Amazon regarding counterfeit Mattel merchandise being sold on that platform, and because Plaintiff has failed to plead any facts capable of overcoming either privilege, Plaintiff's defamation claims are subject to dismissal on that additional ground.

**A.    The Communication Is Subject to the Litigation Privilege**

For over a hundred years, New York law has recognized that "statements made in the course of litigation are entitled to . . . privilege" from liability for defamation. *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015). Recently, the Court of Appeals has confirmed that the privilege extends to "statements made prior to the commencement of an anticipated litigation[.]" *Id.* at 720. The paradigmatic example of such a privileged communication—indeed, the exact issue that confronted the Court of Appeals in *Front*—is a cease-and-desist letter, which by its very nature accuses the recipient of some form of wrongdoing and is thus susceptible to being construed as defamatory. As the Court of Appeals noted in *Front*:

> The rationale supporting the application of privileged status to communication made by attorneys during the course of litigation is also relevant to pre-litigation communication. When litigation is anticipated, attorneys and parties should be free to communicate in order to reduce or avoid the need to actually commence litigation. Attorneys often send cease and desist letters to avoid litigation. Applying privilege to such preliminary communication encourages potential defendants to negotiate with potential plaintiffs in order to prevent costly and time-consuming judicial intervention. Communication during this pre-litigation phase should be encouraged and not chilled by the possibility of being the basis for a defamation suit.

*Id*. at 719. Subsequent cases recognize that such communications are protected by the litigation privilege. *See, e.g.*, *Lombardo v. Dr. Seuss Enters., L.P.*, 2017 U.S. Dist. LEXIS 64854, at *22 (S.D.N.Y. Apr. 7, 2017) (cease and desist letters alleging copyright infringement were privileged); *3P-733, LLC v. Davis*, 2019 NY Slip Op 30946(U), ¶ 9 (Sup. Ct. N.Y. Cty. 2019) ("New York courts have found that statements made in anticipation of litigation—such as cease and desist letters . . . are those protected by the privilege.").

According to the Amended Complaint, the defamatory communication at issue was an "intellectual property complaint" about allegedly counterfeit items for sale on Amazon's website—for which Amazon, as well as Plaintiff, could have been liable. Am. Compl. ¶ 26. The communication was thus equivalent to a cease-and-desist letter directed to Amazon, albeit in an unusual form due to the fact that, because Amazon deals with so much potential intellectual property infringement on its site, it has developed a streamlined process for processing these "take down" demands. *See, e.g.*, *Hard 2 Find Accessories, Inc. v. Amazon.Com, Inc.*, , 2014 U.S. Dist. LEXIS 160980, at *5 (W.D. Wash. Nov. 17, 2014) (likening "take down" complaints submitted to Amazon to "a cease-and-desist letter to a third-party distributor demanding that the distributor stop selling certain allegedly infringing items"), *aff'd*, 691 F. App'x 406 (9th Cir. 2017); *Verbena Prods., LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc.*, , 2020 U.S. Dist. LEXIS 35869, at *11-15 (S.D. Fla. Feb. 28, 2020) (brand-protection firm's sending of take down

9

notice to eBay accusing plaintiff of selling counterfeit products on that platform was an "act[] reasonably attendant to litigation" for purposes of determining whether it was actionable). Thus, because the communication was pertinent to anticipated litigation, it is subject to the litigation privilege.

> **B.     The Communication Is Subject to the "Common Interest" Privilege.**

The allegedly defamatory communication is also subject to New York's "common interest" privilege. Under New York law, a qualified privilege attaches to any "communication made by one person to another upon a subject in which both have an interest." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992). The communication to Amazon at issue here falls squarely within that ambit. The communication was about alleged sale of "counterfeit" goods and took the form of an "intellectual property complaint"—obviously implying that the concern was with the potential infringement of Mattel's intellectual property. Am. Compl. ¶ 26. It was thus a communication from one party with an interest in being aware of potential violations of its intellectual property rights (Mattel via its agent, Incopro) to a third party that also had an interest in being aware of such conduct (Amazon, the marketplace through which the allegedly infringing toys were being distributed). Courts applying New York law to communications warning those capable of preventing misconduct about the potential misconduct have consistently found such communications to be subject to the common-interest privilege. *See, e.g.*, *L.Y.E. Diamonds Ltd. v. Gemological Inst. of Am., Inc.*, 2017 NY Slip Op 32576(U), ¶ 5 (Sup. Ct. N.Y. Cty. 2017) (industry report claiming that diamond distributor had "treated" its diamonds was privileged); *Foster v. Churchill*, 87 N.Y.2d 744, 752 (1996) (communications from investors to company board of directors regarding causes for termination of executives was privileged). That rationale applies equally to the communication at issue here.

### C. Plaintiff Has Not Alleged Facts Capable of Overcoming Either Qualified Privilege.

Finally, Plaintiff has failed to plead facts capable of defeating either applicable privilege. Where, as here, a communication is subject to a qualified privilege, "a defamation plaintiff must plead and prove" facts sufficient to overcome it. *Fleming*, 2019 U.S. Dist. LEXIS 19565, at *26-27. For the litigation privilege, that means pleading and proving that the communication was "not pertinent to a good faith anticipated litigation." *Lombardo*, 2017 U.S. Dist. LEXIS 64854, at *22; *see also Front*, 24 N.Y.3d at 720 (same). For the common-interest privilege, that means pleading and proving "that the defamatory statement was made with either common law or constitutional malice," *i.e.*, either that "the one and only cause for the" statement was "spite or ill will," or that the statement was made with a "high degree of awareness of [its] probable falsity of while the defendant in fact entertained serious doubts as to [its] truth." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).

Plaintiff has failed to allege the requisite facts with respect to either privilege. The only allegations in the Amended Complaint bearing on the Incopro Defendants' intent are conclusory assertions, made with respect to all six defendants, that "[u]pon information and belief, the false counterfeit complaints were not only asserted, but known to be false when asserted," and that "Defendants acted with actual malice, or with reckless disregard for the truth of the matter asserted in their statements to Amazon." Am. Compl. "Introduction," ¶¶ 51, 65. That is insufficient. The law is clear that "[m]ere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege." *Fuji Photo Film*, 669 F. Supp. 2d at 412; *see also Fleming*, 2019 U.S. Dist. LEXIS 19565, at *27 (same). Plaintiff has not alleged a single fact specific to the Incopro Defendants that plausibly suggests that the complaint they allegedly sent to Amazon about counterfeit merchandise was: (a) made in

bad faith; (b) made solely out of spite or ill will; or (c) made in a manner that was intentionally false. Plaintiffs' defamation claims should, therefore, be dismissed because the statements on which they are based are privileged from liability for defamation. *See Chao*, 476 F. App'x at 894-95 (affirming dismissal of defamation claims where claims were subject to common-interest privilege and plaintiff "failed to allege facts supporting a plausible inference that defendants spoke with 'malice'") (internal quotation marks omitted); *Lombardo*, 2017 U.S. Dist. LEXIS 64854, at *22-23 (dismissing defamation claim based on qualified litigation privilege where there was no basis to conclude that cease-and-desist letters were sent in bad faith).[4]

## IV. Plaintiff's Tortious Interference Claim Fails On Additional Grounds.

Finally, Plaintiff's tortious interference claim, even assuming it is not duplicative of Plaintiff's defamation claims, fails for two additional reasons. Under New York law, "the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract ***without justification***; (4) ***actual breach of the contract***; and (5) damages resulting therefrom." *Kirch*, 449 F.3d at 401-02 (emphases added) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). Here, Plaintiff's allegations fail with respect to the second and third elements. Plaintiff has

---

[4] *See also, e.g.*, *Fleming*, 2019 U.S. Dist. LEXIS 19565, at *27-28 (dismissing defamation claim based on common-law privilege where plaintiff offered "no factual support for . . . conclusory charge" that defendant intentionally lied); *Ramsaran v. Abraham*, 2017 U.S. Dist. LEXIS 47751, at *16-17 (S.D.N.Y. Mar. 30, 2017) (dismissing defamation claim where plaintiff offered only "bare and conclusory allegations . . . to defeat the common interest privilege"); *Fuji Photo Film*, 669 F. Supp. 2d at 416 (dismissing defamation claim because plaintiff's "allegations of malice are not entitled to the presumption of truthfulness and are insufficient to overcome the common interest privilege").

failed to plead facts indicating either that the Incopro Defendants acted without justification or that there was an actual breach of contract.

As to whether Plaintiff has adequately alleged that the Incopro Defendants acted without justification in complaining to Amazon, it is well-settled that "[s]eeking to protect" intellectual property "by alerting a third party" about infringement "constitutes a justification defense to" a tortious interference claim. *P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225 (S.D.N.Y. 2002) (letters to furniture companies demanding they cease selling furniture designed by plaintiff because those designs were infringing could not give rise to tortious interference with contract claim because communication was justified); *see also Arista Records, Inc. v. MP3Board, Inc.*, 2002 U.S. Dist. LEXIS 16165, at *49-50 (S.D.N.Y. Aug. 28, 2002) (copyright cease-and-desist letter to third party could not give rise to tortious interference claim because it was justified). That is exactly the situation here. Plaintiff's tortious interference claim is premised on the allegation that "Amazon terminated its contract with Plaintiff as a result of" the various defendants' communications alleging violations of their intellectual property rights. Am. Compl. ¶¶ 26, 31. But, it is self-evident that defendants have a justifiable interest in attempting to protect their intellectual property. Thus, the tortious interference claim fails on the ground that Plaintiff has not adequately alleged that the Incopro Defendants acted without justification.

As for actual breach of contract, it is clear on the face of the Amended Complaint that Plaintiff is not alleging that any complaint to Amazon by the Incopro Defendants led Amazon to breach a contract with Plaintiff. To the contrary, the allegation is only that Amazon "terminated its contract with Plaintiff" as a result of several complaints to Amazon (including one from the Incopro Defendants). Am. Compl. ¶ 31. Presumably, then, Amazon was well within its

13

contractual rights to terminate Plaintiff's contract, and Plaintiff thus has not and cannot plead a fundamental element of its tortious interference claim. *See, e.g.*, *Kirch*, 449 F.3d at 402 (affirming dismissal for failure to plead actual breach notwithstanding allegations that third party "abandoned" and "walked away" from business relationship); *Taboola, Inc. v. Ezoic Inc.*, 2020 U.S. Dist. LEXIS 67934, at *25 (S.D.N.Y. Apr. 17, 2020) (granting motion to dismiss tortious interference claim for failure to plead actual breach notwithstanding allegations that third-party "no longer utilizes [plaintiff's] services").

## CONCLUSION

For the foregoing reasons, the Incopro Defendants respectfully request that the Court dismiss the Amended Complaint with prejudice as to them, and that the Court grant such other relief as it shall deem just and proper.

Dated: New York, New York
      September 30, 2020

Respectfully submitted,

BALLARD SPAHR LLP

By:*/s/Joseph Slaughter*
Joseph Slaughter
1675 Broadway, 19th Floor
New York, NY 10019
Tel.: (212) 223-0200
Fax: (212) 223-1942
slaughterj@ballardspahr.com

Paul Safier (*pro hac vice* forthcoming)
1735 Market St., 51st Floor
Philadelphia, PA 19103
Tel.: (215) 665-8500
Fax: (215) 864-8999
safierp@ballardspahr.com