**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MODELLBAHN OTT HOBBIES, INC., D/B/A SUPREME HOBBIES,<br><br>Plaintiff,<br><br>v.<br><br>VELCRO USA, INC.; AMERICAN TOMBOW, INC.; RUBIKS BRAND, LTD.; MATTEL, INC.; KOALA TOOLS, LLC; YELLOW BRAND PROTECTION; and INCOPRO LIMITED,<br><br>Defendants. | **Case No. 1:20-cv-03526-LLS** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN TOMBOW, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND........................................................................................ 2

      A.    Facts Relevant To Jurisdiction.............................................................. 2

      B.    Facts Relevant To Transfer .................................................................... 3

III.  LAW AND ARGUMENT............................................................................................ 5

      A.    The Claims Against American Tombow Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over American Tombow And Venue Is Improper ............................................................ 5

            1.    Legal Standard On Motion To Dismiss For Lack Of Personal Jurisdiction.............................................................. 5

            2.    This Court Lacks General Personal Jurisdiction Over American Tombow Under NY CPLR § 301.............................. 6

            3.    This Court Lacks Specific Personal Jurisdiction Over American Tombow Under NY CPLR § 302 Because American Tombow Did Not Transact Business In New York and Modellbahn's Claims Against American Tombow Sound Entirely In Defamation ............................................................ 7

                  a.    New York's Long-Arm Statute Does Not Extend Personal Jurisdiction Over American Tombow............................ 7

                      i.    NY CPLR § 302(a)(1) does not permit personal jurisdiction......................................................... 8

                      ii.    NY CPLR §§ 302(a)(2) and (3) prohibit personal jurisdiction......................................................... 9

                  b.    The Exercise Of Personal Jurisdiction In This Court Does Not Comport With Constitutional Due Process Principles................................................................................. 11

            4.    Venue Is Improper In The Southern District Of New York .................... 12

      B.    Modellbahn's Defamation Causes Of Action Fail To State Claims Against American Tombow Because The Statute of Limitations Has Expired ............................................................................................. 12

C.      In The Alternative, This Court Should Sever And Transfer Modellbahn's Claims Against American Tombow ............................................. 13

    1.      Legal Standards For Severance And Transfer .......................................... 13

    2.      Severance Of American Tombow Is Appropriate Because American Tombow Is Entirely Unrelated To The Other Defendants ............................................................................................. 15

    3.      Transfer Is Appropriate To The Northern District of Georgia ................. 16

        a.      Jurisdiction And Venue Are Proper In The Northern District of Georgia ...................................................................... 16

        b.      Transfer To The Northern District Of Georgia Is In The Interest Of Justice ................................................................. 17

            i.      The convenience of witnesses and parties, the locus of the operative facts, and the relative ease of access to sources of proof all favor transfer to the Northern District of Georgia ..................... 17

            ii.     Modellbahn's choice of forum should be given no weight because it filed suit in a district without any connection to the operative facts of this case, and where jurisdiction is lacking ................. 19

            iii.    The availability of process to compel the attendance of witnesses, the relative means of the parties, and the familiarity of the transferee court with the legal issues are neutral regarding transfer to the Northern District of Georgia ..................... 19

            iv.     Judicial economy and the interest of justice favor transfer to the Northern District of Georgia .......................................................................... 20

IV.  CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**CASES**

*Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189 (S.D.N.Y. 2000)............................................ 18

*Andresakis v. City of Milford*, No. 98 Civ. 0214, 1998 U.S. Dist. LEXIS 10621
(S.D.N.Y. July 16, 1998) ................................................................................................. 11

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ......................................... 6, 8, 9, 11

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ........................................................ 7

*Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152 (2d Cir. 1996)....................................................... 10

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ................................................................................. 7

*DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153, 2014 U.S. Dist. LEXIS
14753 (S.D.N.Y. Feb. 5, 2014)........................................................................................ 13

*Dickerson v. Novartis Corp.*, 315 F.R.D. 18 (S.D.N.Y. 2016) .............................................. 14, 16

*DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc.*, No. 07 Civ 3746, 2007 U.S.
Dist. LEXIS 89598 (S.D.N.Y. Dec. 4, 2007) ................................................................. 17

*Federman Assocs. v. Paradigm Med. Indus.*, No. 96 Civ 8545, 1997 U.S. Dist. LEXIS
23685 (S.D.N.Y. April 8, 1997) .......................................................................... 16, 17, 20, 21

*Fischer v. Stiglitz*, No. 15-CV-6266, 2016 U.S. Dist. LEXIS 74842 (S.D.N.Y. June 8,
2016) ............................................................................................................... 5, 6, 8, 10

*Galderma S.A. v. Peri*, No. 15-CV-667, 2016 U.S. Dist. LEXIS 61203 (S.D.N.Y.
March 30, 2016)............................................................................................ 14, 16, 17, 19

*Gendreau v. Kigawa*, No. 13-cv-3217, 2014 U.S. Dist. LEXIS 165433 (S.D.N.Y.
Nov. 14, 2014) ................................................................................................................ 17

*Goldfarb v. Channel One Russ.*, 442 F. Supp. 3d 649 (S.D.N.Y. 2020) .............................. 5, 9, 11

*Hallwood Realty Partners v. Gotham Partners*, 104 F. Supp. 2d 279 (S.D.N.Y. 2000)............. 14

*Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 Civ 6893, 2006 U.S. Dist.
LEXIS 25880 (S.D.N.Y. May 1, 2006) ........................................................................... 13

*In re Hanger Orthopedic Grp., Inc.*, 418 F. Supp. 2d 164 (E.D.N.Y. 2006)................................ 18

*In re Ski Train Fire*, 224 F.R.D. 543 (S.D.N.Y. 2004)................................................................... 14

*Int'l Shoe Co. v. Wash*, 326 U.S. 310 (1945).............................................................................. 11

iii

*Lader v. Delgado*, 941 F. Supp. 2d 267 (E.D.N.Y. 2013) ............................................................ 12

*N. Jersey Media Grp. v. Fox News Network, LLC*, 312 F.R.D. 111 (S.D.N.Y. 2015) .......... 14, 15

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006) ........... 18, 19, 20

*Ousmane Bah v. Apple Inc.*, No. 19-cv-3539, 2020 U.S. Dist. LEXIS 22867 (S.D.N.Y. Feb. 10, 2020) ............................................................................................................ 5, 8, 10

*Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122 (S.D.N.Y. 2003) ........................................... 14, 15

*Praxair, Inc. v. Morrison Knudsen Corp.*, No. 00-CV-0892E(Sc), 2001 U.S. Dist. LEXIS 1130 (W.D.N.Y. Feb. 6, 2001) .................................................................................. 19

*Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346 (E.D.N.Y. 2016) ................ 15, 19

*Senese v. Hindle*, No. 11-CV-0072, 2011 U.S. Dist. LEXIS 1167979 (E.D.N.Y. Sept. 9, 2011) ...................................................................................................................... 2

*Sharp Corp. v. Hisense Elec. Co.*, No. 17 Civ. 05404, 2017 U.S. Dist. LEXIS 221609 (S.D.N.Y. Dec. 22, 2017) ............................................................................................... 14, 15

*SPCA of Upstate N.Y., Inc. v. American Working Collie Assn.*, 18 N.Y.3d 400 (N.Y. 2012) ............................................................................................................................... 6, 9

*Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016) ...................................... 5, 7

*Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87 (2d Cir. 2003) ...................................................... 12

## STATUTES

28 U.S.C. § 1391(a)(1) ................................................................................................................ 16

28 U.S.C. § 1391(b)(2) ................................................................................................................ 12

28 U.S.C. § 1391(c) ..................................................................................................................... 16

28 U.S.C. § 1404(a) ..................................................................................................................... 15

28 U.S.C. § 1406(a) ................................................................................................... 13, 15, 16, 19

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 12

Fed. R. Civ. P. 21 ................................................................................................................... 13, 14

NY CPLR § 215(3) ...................................................................................................................... 12

iv

NY CPLR § 301 .......................................................................................... 6, 7

NY CPLR § 302 .............................................................................................. 7

NY CPLR § 302(a) ...................................................................................... 6, 7

NY CPLR § 302(a)(1) ............................................................................. 7, 8, 9

NY CPLR § 302(a)(2) ........................................................................ 6, 7, 9, 10

NY CPLR § 302(a)(3) ........................................................................ 6, 7, 9, 10

NY CPLR § 302(a)(4) ...................................................................................... 7

NY CPLR § 503(a) ........................................................................................ 12

## I.  <u>INTRODUCTION</u>

Plaintiff Modellbahn Ott Hobbies, Inc. ("Modellbahn"), a Pennsylvania company, filed this action in New York for defamation and related claims against multiple, entirely unrelated entities. Defendant American Tombow, Inc. ("American Tombow"), a Georgia company, does not reside in or otherwise have sufficient contacts with New York to support personal jurisdiction. Modellbahn rests its entire complaint on broad allegations of defamation, most of which were alleged collectively against all defendants and are clearly time barred. Even accepting the allegations in Modellbahn's amended complaint as true, this Court lacks general and specific personal jurisdiction over American Tombow for a multitude of reasons: American Tombow does not reside in New York, have any offices or employees in New York, own any real estate or other assets in New York, or transact any business in New York. Furthermore, American Tombow did not commit a tortious act within New York, nor did it commit a tort elsewhere causing injury in New York. Finally, American Tombow did not make any statements in New York, or make any statements that were viewed or viewable by anyone in New York. Because Modellbahn's claims against American Tombow are premised entirely on an allegedly defamatory statement made by American Tombow, which resides in Georgia, to Amazon, which resides in Washington, personal jurisdiction over American Tombow is statutorily impermissible under New York's long-arm statute, and the claims against American Tombow must be dismissed.

Alternatively, this Court should sever the claims against American Tombow and transfer them to the Northern District of Georgia, where jurisdiction and venue are proper and where transfer would be in the interest of justice.

## II.    **FACTUAL BACKGROUND**

### A.    **Facts Relevant To Jurisdiction**

Modellbahn's July 22, 2020 amended complaint asserts defamation, defamation per se, and tortious interference against multiple, entirely unrelated defendants located in multiple states, ***none*** of whom reside in New York, for making separate and unrelated statements to Amazon. Modellbahn directs virtually all of its allegations against the Defendants collectively. The only two allegations specifically about American Tombow are that: (i) American Tombow has its principal place of business in Suwanee, Georgia, and (ii) in 2017, American Tombow "published intellectual property complaints with Amazon against Plaintiff falsely alleging the products it was selling were counterfeit." (Dkt. 13 at ¶¶ 4, 24.) Modellbahn makes similar accusations against the other Defendants, and generally alleges against all Defendants that their statements were not retracted, and that they caused Modellbahn's contract with Amazon to be terminated. (*Id.* at ¶¶ 22-29.) Modellbahn did not allege any additional information about the alleged "intellectual property complaints with Amazon," like the location of the sender of the complaints or the location of the recipient of the complaints. Most importantly, Modellbahn did not allege a single contact between American Tombow and New York.

American Tombow sent one notice to Amazon relating to Modellbahn, and immediately retracted it.[1] On July 12, 2017, an employee of American Tombow located in Georgia mistakenly submitted a notice to Amazon, through its Amazon account, that Modellbahn was selling counterfeit American Tombow products (the "Violation Notice"). On the same day, the same American Tombow employee realized the mistake and submitted a request to Amazon retracting

---

[1] Although the plaintiff's allegations must be accepted as true when considering whether it has stated a claim, American Tombow can dispute these allegations with evidence when moving to dismiss for lack of personal jurisdiction. *See, e.g.*, *Senese v. Hindle*, No. 11-CV-0072, 2011 U.S. Dist. LEXIS 1167979 at *29-31 (E.D.N.Y. Sept. 9, 2011).

the Violation Notice and requesting that Amazon reinstate the seller and ASINs at issue. Also on the same day, after the American Tombow employee submitted the request, an Amazon employee ostensibly located in the state of Washington, responded to the American Tombow employee, confirming American Tombow had retracted its complaint and the seller and ASINs had been reinstated. During this time, a representative of Modellbahn located in Pennsylvania had emailed the American Tombow employee and requested that the employee retract the infringement claim, to which the employee responded that the Violation Notice was a mistake and would be retracted. Modellbahn never contacted American Tombow about this issue again. No employee of American Tombow ever directed the Violation Notice to anyone in New York. (Declaration of Jeffery A. Hinn ("Hinn Decl.") at ¶¶ 5-10.)

Nearly three years later, Modellbahn filed this action in New York, a forum with no connection to the events, communications, or individuals involved in American Tombow's Violation Notice.

### B. Facts Relevant To Transfer

Through the declaration of Jeffery A. Hinn submitted herewith, American Tombow submits that Georgia is the proper venue should this Court transfer, rather than dismiss, the claims. First, American Tombow's headquarters are located in Suwanee, Georgia. (Hinn Decl. ¶ 3.) American Tombow does not have any offices or employees in New York, own or rent any real estate in New York, or hold any bank accounts in New York. (*Id*. ¶ 4.) Second, the key documents that will be at issue in this case are located at American Tombow's headquarters in Georgia. (*Id*. ¶ 11.) These documents include (i) documents related to American Tombow's trademarks; (ii) documents related to American Tombow's authorized sellers, including the agreements, policies, and terms and conditions that are applicable to American Tombow's authorized sellers;

(iii) documents related to American Tombow's account with Amazon; and (iv) documents related to the Violation Notice American Tombow submitted through its Amazon account. (*Id.*)

Third, the key witnesses that American Tombow anticipates calling are all located in or around Suwanee, Georgia. (*Id.* ¶ 12.) These witnesses include:

- Allison Page, Ecommerce Business Development Specialist for American Tombow, who will provide testimony regarding American Tombow's agreements and policies with its authorized sellers, the quality controls that authorized sellers are required to follow under those agreements and policies, and to whom the authorized sellers are permitted to sell American Tombow products.

- Ruby Daniel, Chief Marketing Director for American Tombow, who will provide testimony regarding American Tombow's account on Amazon, and its ability to submit notices to Amazon regarding infringing activity by third-party sellers on Amazon.

- Jeffery A. Hinn, President/CEO for American Tombow, who will provide testimony regarding American Tombow's trademarks and how the value of the trademarks is harmed when unauthorized sellers, such as Modellbahn, sell products bearing American Tombow's trademarks on the Internet.

(*Id.*)

American Tombow does not anticipate introducing *any* evidence that is located in New York (because there is none) or calling any witnesses who are located in New York in defense of the claims filed against it or in support of any potential counterclaims that could be filed in this case (again, because there are no witnesses in New York). (*Id.* ¶ 13.)

## III.  LAW AND ARGUMENT

This Court should dismiss the claims against American Tombow because it lacks personal jurisdiction over American Tombow and venue is improper. Modellbahn has alleged no basis for personal jurisdiction under New York's long-arm statute, and all of Modellbahn's claims against American Tombow are statutorily barred by the statute's "defamation exception." Alternatively, this Court should sever the claims against American Tombow and transfer them to the Northern District of Georgia, where American Tombow resides, where the American Tombow employee who sent the Violation Notice was located, and where all of American Tombow's witnesses and sources of proof are located.

**A.  The Claims Against American Tombow Should Be Dismissed Because This Court Lacks Personal Jurisdiction Over American Tombow And Venue Is Improper.**

**1.  Legal Standard On Motion To Dismiss For Lack Of Personal Jurisdiction**

In responding to a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Goldfarb v. Channel One Russ.*, 442 F. Supp. 3d 649, 660 (S.D.N.Y. 2020). A court must have either general or specific personal jurisdiction over a defendant. *Ousmane Bah v. Apple Inc.*, No. 19-cv-3539, 2020 U.S. Dist. LEXIS 22867 at *9 (S.D.N.Y. Feb. 10, 2020). General jurisdiction exists if the defendant is "essentially at home" in the forum state. *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 15 (E.D.N.Y. 2016). Specific personal jurisdiction exists over a defendant if: (i) personal jurisdiction is authorized by the long-arm statute "of the state in which the court is located;" and (ii) the exercise of personal jurisdiction "comport[s] with constitutional due process principles." *Fischer v. Stiglitz*, No. 15-CV-6266, 2016 U.S. Dist. LEXIS 74842 at *7 (S.D.N.Y. June 8, 2016).

Section 301 of New York's Civil Practice Law and Rules ("NY CPLR") permits general personal jurisdiction over a defendant who "has engaged in . . . a continuous and systematic course of 'doing business'" in New York. *Id.* at *8. Under section 302(a) of the NY CPLR, the state's long-arm statute, there are four bases for specific personal jurisdiction: (1) if the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) if the defendant "commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*"; (3) if the defendant "commits a tortious act without the state causing injury to person or property within the state, *except as to a cause of action for defamation of character arising from the act*," as long as it regularly solicits business in the state or otherwise should reasonably expect the act to have consequences in the state; or (4) if the defendant "owns, uses or possesses any real property situated within the state" (emphasis added).

Unlike many states, New York takes a narrow approach to long-arm jurisdiction in defamation cases and explicitly exempts defamation claims from the scope of sections 302(a)(2) and (3). *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244-45 (2d Cir. 2007); *SPCA of Upstate N.Y., Inc. v. American Working Collie Assn.*, 18 N.Y.3d 400, 403 (N.Y. 2012). The defamation exception represents the legislature's intent to "keep the provision well within constitutional bounds." *Best Van Lines*, 490 F.3d at 245 (citation omitted).

### 2. This Court Lacks General Personal Jurisdiction Over American Tombow Under NY CPLR § 301.

Modellbahn's amended complaint admits that American Tombow does not have its principal place of business in New York, and does not allege that American Tombow was incorporated under the laws of New York. Instead, Modellbahn is silent as to American Tombow's state of incorporation, and concedes that American Tombow has its principal place of business in Georgia. (Dkt. 13 at ¶ 4; Hinn Decl. at ¶ 3.) These facts alone eliminate any realistic

possibility of general jurisdiction because, following the Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), courts within the Second Circuit have concluded that "aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction *only* in its place of incorporation or principal place of business." *Strauss*, 175 F. Supp. 3d at 15 (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)). As further support, American Tombow also submits that it: (1) has no offices in New York; (2) has no employees in New York, (3) does not own any real estate in New York, and (4) does not have any bank accounts in New York. (Hinn Decl. at ¶¶ 3-4.) Modellbahn makes no allegations in its Amended Complaint that American Tombow has any contacts with New York or is otherwise subject to personal jurisdiction in this Court. Thus, this Court lacks general personal jurisdiction under NY CPLR § 301.

3. **This Court Lacks Specific Personal Jurisdiction Over American Tombow Under NY CPLR § 302 Because American Tombow Did Not Transact Business In New York and Modellbahn's Claims Against American Tombow Sound Entirely In Defamation.**

a. **New York's Long-Arm Statute Does Not Extend Personal Jurisdiction Over American Tombow.**

American Tombow is not subject to specific personal jurisdiction in this Court under any of the four bases in NY CPLR § 302(a). Because American Tombow does not possess any real property in New York, jurisdiction is unavailable under NY CPLR § 302(a)(4). This Court also lacks jurisdiction under sections 302(a)(1)-(3) because American Tombow has not transacted any business in New York under subsection (a)(1), and because personal jurisdiction is statutorily impermissible under the defamation exception in subsections (a)(2) and (3).

### i. NY CPLR § 302(a)(1) does not permit personal jurisdiction.

Personal jurisdiction is available in defamation cases only if the requirements of NY CPLR § 302(a)(1) are met, which permits jurisdiction if: (i) the defendant "transacts any business" in New York, and (ii) the "cause of action aris[es] from" that transaction. *Best Van Lines*, 490 F.3d at 246. For the first part of the test, "[c]ourts look to 'the totality of the defendant's activities within the forum' . . . to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity' satisfying the first part of the test." *Id.* For the second part of the test, a claim will be deemed to have arisen out of the party's activities in New York "if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Id.*

Here, Modellbahn does not allege that American Tombow conducted **any** activities in New York constituting the transaction of business, let alone allege a "substantial relationship" between activities in New York and the claims asserted. The only act by American Tombow that Modellbahn asserts is the single Violation Notice from more than three years ago, which has no connection to New York whatsoever. This Violation Notice was sent to Amazon by an employee in Georgia, and was processed by an Amazon employee at Amazon's headquarters in the state of Washington. The communication was never directed to anyone in New York, and was not created, researched, written, developed, or produced in New York. Modellbahn does not allege a single contact with New York, and does not claim that the Violation Notice was viewed or viewable by a single person in New York.[2] *See Bah*, 2020 U.S. Dist. LEXIS 22867 at *15-16 (finding that

---

[2] Even if Modellbahn were to somehow assert that the Violation Notice reached New York (which it cannot), it still would not constitute the transaction of business in the state. New York courts "construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation.'" *Best Van Lines*, 490 F.3d at 248; *Fischer*, 2016 U.S. Dist. LEXIS 74842 at *15. Allegedly defamatory statements made online do not constitute a "transact[ion] of business" in New York unless the defendant's contact with New York "include[s] something more" than the defamation alleged. *Id.* at *15-16 (quoting *Best Van Lines*, 490 F.3d at 249). The single act

allegedly defamatory statements made to non-New York agencies, made internally, made to the defendant's employees across several states, or otherwise not entering New York "lack a substantial nexus with defendants' business activities in New York"); *cf. Goldfarb*, 442 F. Supp. 3d at 662 (extending personal jurisdiction to defamation case where the defendant maintained a studio, camera crew, and correspondent in New York who interviewed the plaintiff at the defendant's New York studio, but calling it "a close case").

Thus, the allegedly defamatory Violation Notice cannot constitute the transaction of business in New York, and Modellbahn does not allege any contacts between American Tombow and New York or its residents. As a result, this Court lacks personal jurisdiction over American Tombow under NY CPLR § 302(a)(1) and is left with only NY CPLR §§ 302(a)(2) and (3). However, sections 302(a)(2) and (3) are similarly unavailing, as they render personal jurisdiction over American Tombow statutorily impermissible because Modellbahn's claims sound entirely in defamation.

### ii. NY CPLR §§ 302(a)(2) and (3) prohibit personal jurisdiction.

New York takes a narrow approach to long-arm jurisdiction in defamation cases. *SPCA*, 18 N.Y. 3d at 403. "[S]ections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries in the state, respectively, explicitly exempt causes of action for the tort of defamation from their scope, whether or not such jurisdiction would be consistent with due process protection." *Best Van Lines*, 490 F.3d at 244-45.

---

of uttering a defamation, even if it *does* occur in New York or reach a person in New York (which American Tombow's Violation Notice did not) "is not a 'transact[ion of] business' that may provide the foundation for personal jurisdiction." *Best Van Lines*, 490 F.3d at 248.

Here, even accepting Modellbahn's allegations of defamation against American Tombow as true, American Tombow did not commit any tortious acts *in New York*. The American Tombow employee who sent the Violation Notice and subsequent retraction to Amazon was located in Georgia, American Tombow has no offices or employees in New York, and there is no allegation that the Amazon employee who received American Tombow's Violation Notice was in New York. American Tombow also did not commit a tortious act that caused injury in New York, as Modellbahn itself is located in Pennsylvania and made no allegations of harm occurring in New York. These facts alone prevent this Court from exercising personal jurisdiction over American Tombow.

However, even if Modellbahn were to somehow assert that the Violation Notice reached New York, the defamation exception in New York's long-arm statute strictly prohibits the exercise of personal jurisdiction over defamation claims and any other claim that "sounds in defamation." The defamation exception bars jurisdiction over both of Modellbahn's defamation claims, as well as its tortious interference claim, because all of the claims are based on the allegedly defamatory statements and therefore all "sound in defamation." *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996); *see also Bah*, 2020 U.S. Dist. LEXIS 22867 at *18-19; *Fischer*, 2016 U.S. Dist. LEXIS 74842 at *11-13 (applying the defamation exception in NY CPLR §§ 302(a)(2)-(3) to bar a claim of tortious interference because it "rest[ed] on Defendants' allegedly defamatory statements"). Specifically, Modellbahn alleges in its tortious interference claim that "Defendants published false counterfeit complaints on Amazon," that "[b]y publishing the defamatory statements to Amazon as alleged herein, the Defendants intended to curtail, affect, or interrupt the working relationship of trust between Plaintiff and Amazon," and that "[a]s a result of Defendants'

false counterfeit complaints published, Amazon terminated its contract with Plaintiff causing Plaintiff to suffer significant damages." (Dkt. 13 at ¶¶ 39, 41, 43.)

Accordingly, there is no basis in New York's long-arm statute for personal jurisdiction over American Tombow, and this Court should dismiss American Tombow from this action.

### b. The Exercise Of Personal Jurisdiction In This Court Does Not Comport With Constitutional Due Process Principles.

Because New York's long-arm statute does not permit this Court to exercise personal jurisdiction over American Tombow, this Court need not examine whether asserting jurisdiction would comport with due process requirements. *Best Van Lines*, 490 F.3d at 244 (explaining that if personal jurisdiction is "statutorily impermissible [under New York's long-arm statute], of course, we need not reach the question of its constitutionality").

However, even if this Court were to consider it, exercising personal jurisdiction in this case would not comport with constitutional due process principles because American Tombow does not have an office, employees, or assets in New York, does not transact business in New York, did not submit the Violation Notice in New York, and did not direct it to anyone in New York. (Hinn Decl. at ¶¶ 3-10.) Modellbahn fails to identify a single contact between American Tombow and New York. As a result, Modellbahn has failed to establish that American Tombow has sufficient minimum contacts with New York, or that American Tombow has "purposefully availed itself of the privilege of conducting business" within New York. *See Andresakis v. City of Milford*, No. 98 Civ. 0214, 1998 U.S. Dist. LEXIS 10621 at *4 (S.D.N.Y. July 16, 1998) (citing *Int'l Shoe Co. v. Wash*, 326 U.S. 310, 316 (1945)); *cf. Goldfarb*, 442 F. Supp. 3d at 664 (finding that the defendant "purposefully availed itself of the privilege of conducting business within the forum state by maintaining a studio and at least one full-time employee in New York and by distributing its programming to paying subscribers throughout New York").

### 4. Venue Is Improper In The Southern District Of New York.

Venue is improper for the same factual reasons that personal jurisdiction is improper. Modellbahn makes a conclusory assertion that venue is proper over its claims over all of the defendants because, "upon information and belief," a substantial part of the events giving rise to the claims occurred in the Southern District of New York. (Dkt. 13 at ¶ 12.) Not so. In fact, ***none*** of the events giving rise to Modellbahn's claims against American Tombow occurred in New York, and, as described above, American Tombow has no presence in New York. Rather, the only allegation Modellbahn makes that any events giving rise to the claims against any of the Defendants occurred in New York is its single allegation that one of the other, entirely unrelated Defendants resides in New York. This is wholly insufficient to establish venue over all of the Defendants in this Court. *See* 28 U.S.C. § 1391(b)(2); NY CPLR § 503(a).

### B. Modellbahn's Defamation Causes Of Action Fail To State Claims Against American Tombow Because The Statute of Limitations Has Expired.

Even if personal jurisdiction and venue were proper over American Tombow in this Court, the defamation claims against American Tombow should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because they are time-barred. Defamation claims under New York law are subject to a one-year statute of limitations pursuant to NY CPLR § 215(3). Moreover, a defamation claim accrues when the allegedly defamatory statement is first published—here, when American Tombow's Violation Notice was submitted to Amazon on July 12, 2017. *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) (noting that the statute of limitations for defamation in New York is one year); *Lader v. Delgado*, 941 F. Supp. 2d 267, 271-72 (E.D.N.Y. 2013) (finding that defamation per se claims are subject to a one-year statute of limitations and "accrue[ ] upon the first publication of the allegedly defamatory statement").

In its Prayer for Relief, Modellbahn requests only that this Court "find that Defendants Velcro, Mattel, and IncoPro are liable for business defamation."[3] (Dkt. 13 at p. 9.) To the extent that Modellbahn brings defamation and defamation per se claims against American Tombow, as well, American Tombow's only relevant action is the single Violation Notice it sent and retracted on July 12, 2017, three years before Modellbahn filed its Amended Complaint. As a result, the defamation claims against American Tombow are facially deficient and must be dismissed outright.

### C. In The Alternative, This Court Should Sever And Transfer Modellbahn's Claims Against American Tombow.

Pursuant to Fed. R. Civ. P. 21, to the extent this Court does not entirely dismiss American Tombow from this action for a complete lack of personal jurisdiction and venue, this Court should sever American Tombow and transfer the claims to the Northern District of Georgia. American Tombow is subject to jurisdiction in Georgia, and Georgia is the most convenient forum for key witnesses, provides the easiest access to key evidence, and is the locus of operative facts.

### 1. Legal Standards For Severance And Transfer

When a court determines that it lacks personal jurisdiction over the defendant or that venue in a case is improper, it must dismiss the case or "if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a); *see also DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ 6153, 2014 U.S. Dist. LEXIS 14753 at *46-47 (S.D.N.Y. Feb. 5, 2014); *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 Civ 6893, 2006 U.S. Dist. LEXIS 25880 at *26-27 (S.D.N.Y. May 1, 2006). Despite the indisputable jurisdictional deficiencies in Modellbahn's claims against American Tombow, should this Court

---

[3] Additionally, Modellbahn's counsel made representations to American Tombow's counsel that the defamation claims do not apply to American Tombow. Nonetheless, as the Amended Complaint is unclear, American Tombow moves for dismissal on this basis out of an abundance of caution.

choose not to dismiss the claims, it should in the alternative sever and transfer those claims to the Northern District of Georgia.

Pursuant to Fed. R. Civ. P. 21, where jurisdiction and venue are improper over one of multiple parties, the court may sever a party from an action and transfer the severed party to a court where jurisdiction and venue are proper. *In re Ski Train Fire*, 224 F.R.D. 543, 546 (S.D.N.Y. 2004); *Hallwood Realty Partners v. Gotham Partners*, 104 F. Supp. 2d 279, 287 (S.D.N.Y. 2000). Severance is particularly appropriate where, as here, the defendants are entirely unrelated, their claims and defenses rest on different witnesses and evidence, and there are no allegations that the defendants cooperated or colluded against the plaintiff. *See N. Jersey Media Grp. v. Fox News Network, LLC*, 312 F.R.D. 111, 115 (S.D.N.Y. 2015) ("Where, as here, plaintiffs' claims under the same statutory framework arise from different circumstances and would require separate analyses, they are not logically related."); *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 26 (S.D.N.Y. 2016) ("Given the distinct factual allegations and legal claims, severance of [one defendant's] claims 'would reduce the potential for prejudice that could arise from confusion of the factual issues and legal claims made by the plaintiffs.'"); *Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 128 (S.D.N.Y. 2003) (finding that severance was proper where there were "no allegations of any cooperative or collusive relationship between the" defendants).

Courts may transfer a case if: (1) the case could have been brought in the proposed forum, and (2) transfer would promote the convenience of the parties and witnesses and would be in the interest of justice. *Sharp Corp. v. Hisense Elec. Co.*, No. 17 Civ. 05404, 2017 U.S. Dist. LEXIS 221609 at *10 (S.D.N.Y. Dec. 22, 2017); *Galderma S.A. v. Peri*, No. 15-CV-667, 2016 U.S. Dist. LEXIS 61203 at *21 (S.D.N.Y. March 30, 2016). Courts generally consider the following elements in determining whether a transfer is in the interest of justice: (1) the convenience of witnesses;

(2) the convenience of the parties; (3) the locus of operative facts; (4) the weight accorded to the plaintiff's choice of forum; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the comparative familiarity of each district with the governing law; and (9) judicial economy and the interest of justice based on the totality of the circumstances. *See, e.g.*, *Sharp Corp.*, 2017 U.S. Dist. LEXIS 221609 at *10-11; *Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 355 (E.D.N.Y. 2016) ("Courts generally consider the same factors when deciding whether to transfer pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).").

### 2. Severance Of American Tombow Is Appropriate Because American Tombow Is Entirely Unrelated To The Other Defendants.

Severance is appropriate because American Tombow is entirely unrelated to the other Defendants, its claims and defenses rely on different witnesses and evidence, and there are no allegations that American Tombow cooperated or colluded with other Defendants. Modellbahn makes no allegations that American Tombow is related to any of the other Defendants or has ever communicated with any other Defendant. *See Pergo*, 262 F. Supp. 2d at 128 (finding that severance was proper where there were "no allegations of any cooperative or collusive relationship between the" defendants). Each intellectual property complaint allegedly submitted to Amazon by each Defendant is a separate, unrelated transaction or occurrence that occurred by different companies in different states and at different times. In fact, the Violation Notice submitted by American Tombow occurred almost two years before other alleged complaints by other Defendants. (Dkt. 13 at ¶¶ 24-26.) American Tombow's defense of Modellbahn's claims will require different evidence and separate witnesses from that of other Defendants, all located in a state where no other Defendant resides. *See N. Jersey Media Grp.*, 312 F.R.D. at 115 ("Where, as here, plaintiffs' claims

. . . arise from different circumstances and would require separate analyses, they are not logically related."); *Dickerson*, 315 F.R.D. at 26 ("Given the distinct factual allegations and legal claims, severance of [one defendant's] claims 'would reduce the potential for prejudice that could arise from confusion of the factual issues and legal claims made by the plaintiffs.'").

### 3. Transfer Is Appropriate To The Northern District of Georgia.

Should this Court choose to transfer the claims against American Tombow instead of dismissing them, it should transfer them to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a) because this case could have been brought in Georgia, and transfer to Georgia is most appropriate for the convenience of witnesses, the location of operative facts and relevant evidence, and the interest of justice.

#### a. Jurisdiction And Venue Are Proper In The Northern District of Georgia.

Under 28 U.S.C. § 1406(a), a court can transfer a case if jurisdiction and venue are proper in the new forum—in other words, as long as the case could have been filed there initially. *Galderma*, 2016 U.S. Dist. LEXIS 61203 at *21-22. Here, Modellbahn could have filed this action in the Northern District of Georgia because: (1) American Tombow's principal place of business is in Georgia, and it is therefore subject to personal jurisdiction in Georgia; and (2) venue is proper in Georgia because American Tombow "resides" in Georgia by virtue of having its principal place of business there. *See* 28 U.S.C. § 1391(a)(1) and (c); *Federman Assocs. v. Paradigm Med. Indus.*, No. 96 Civ. 8545, 1997 U.S. Dist. LEXIS 23685 at *4-5 (S.D.N.Y. April 8, 1997) (finding that case could have been brought in transferee forum because, by virtue of corporate defendant having its principal place of business in transferee forum, transferee forum court had personal jurisdiction over defendant and venue was proper).

### b. Transfer To The Northern District Of Georgia Is In The Interest Of Justice.

#### i. The convenience of witnesses and parties, the locus of the operative facts, and the relative ease of access to sources of proof all favor transfer to the Northern District of Georgia.

The convenience of witnesses is the most important factor in the transfer analysis. *DLJ Mortg. Capital, Inc. v. Cameron Fin. Grp., Inc.*, No. 07 Civ. 3746, 2007 U.S. Dist. LEXIS 89598 at *18 (S.D.N.Y. Dec. 4, 2007). Courts routinely transfer cases where the principal events occurred and the principal witnesses are located in another district. *Id.*; *see also Galderma*, 2016 U.S. Dist. LEXIS 61203 at *23 (finding both parties would benefit from transfer to the forum of the defendants' principal place of business "as Defendants' operations and principals" were located there). The analysis turns not on the number of prospective witnesses, but on the degree of importance of their testimony. *Federman*, 1997 U.S. Dist. LEXIS 23685 at *5-7 (S.D.N.Y. April 8, 1997) (finding that the majority of witnesses providing critical testimony resided in or near the transferee forum, favoring transfer there).

Because this factor is so important, parties seeking transfer must specify the witnesses they expect to call, their general testimony, and their location in the desired forum. *See Gendreau v. Kigawa*, No. 13-cv-3217, 2014 U.S. Dist. LEXIS 165433 at *19 (S.D.N.Y. Nov. 14, 2014). Here, as explained above, American Tombow's key witnesses in this action—who will testify about American Tombow's trademarks, authorized sellers, Amazon account, and ability to submit violation notices to Amazon—are all located in Georgia. (Hinn Decl. ¶ 12.) American Tombow does not anticipate calling any witnesses in support of its defense of the claims against it or in support of any potential counterclaims who are located in New York. (*Id*. at ¶ 13.) Indeed, not even the Plaintiff is located in New York. Thus, this factor strongly favors transfer to facilitate the

convenience of American Tombow's anticipated witnesses. *See In re Hanger Orthopedic Grp., Inc.*, 418 F. Supp. 2d 164, 168-69 (E.D.N.Y. 2006) (finding that "convenience of the witnesses" factor favored transfer to defendants' desired forum because defendants' witnesses were located there). The convenience of both the parties and their anticipated witnesses favors transfer to Georgia.

Additionally, all of the documents related to the submission of the Violation Notice and all of American Tombow's employees who are knowledgeable about these issues are in Georgia. (Hinn Decl. ¶¶ 11-12.) Thus, the locus of operative facts in this case is in Georgia, and this factor strongly favors transfer to Georgia. *See Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006) (finding that locus of operative facts in patent infringement action was where manufacturer kept its records and purchase orders, where it stored unsold products, and where its employees were located). Although the location of documents may be less significant because technology has advanced and electronic production is widespread, *see Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000), courts have found that transfer can still impose a burden on litigants who must copy and transport documents over longer distances. *See, e.g.*, *Neil Bros.*, 425 F. Supp. 2d at 330-31.

Here, the majority of the relevant documents, data and other evidence is located at American Tombow's headquarters in Suwanee, Georgia. This includes documents relating to American Tombow's account with Amazon and any infringement claims American Tombow submits to Amazon through its account. (Hinn Decl. ¶¶ 3, 11-12.) This factor therefore favors transfer to the Northern District of Georgia.

ii. **Modellbahn's choice of forum should be given no weight because it filed suit in a district without any connection to the operative facts of this case, and where jurisdiction is lacking.**

A plaintiff's choice of forum is given little to no weight when the plaintiff files suit in a district without any connection to the operative facts of the case, where the plaintiff does not reside, and where personal jurisdiction is lacking. *See Galderma*, 2016 U.S. Dist. LEXIS 61203 at * 22-23 (giving plaintiff's choice of forum little weight when considering transfer under § 1406(a) because plaintiff filed suit in a court where "personal jurisdiction is lacking," and collecting cases); *Sarracco*, 220 F. Supp. 3d at 357 (finding that weight given to plaintiff's choice of forum is "significantly diminished" where none of the operative facts occurred in the plaintiff's chosen forum and the cause of action arose outside the forum, and collecting cases); *Neil Bros.*, 425 F. Supp. 2d at 333 (giving plaintiff's choice of forum little to no weight because it was not the plaintiff's residence, none of the operative facts giving rise to the lawsuit occurred there, and none of the parties or witnesses resided there). Modellbahn's choice of forum should not be given any weight by virtue of the fact that Modellbahn is the plaintiff in this action and does not even reside in New York, nor are the claims related to any action connected in any way to New York.

iii. **The availability of process to compel the attendance of witnesses, the relative means of the parties, and the familiarity of the transferee court with the legal issues are neutral regarding transfer to the Northern District of Georgia.**

This factor is "generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *Praxair, Inc. v. Morrison Knudsen Corp.*, No. 00-CV-0892E(Sc), 2001 U.S. Dist. LEXIS 1130 at *13 (W.D.N.Y. Feb. 6, 2001). Here, American Tombow's anticipated

key witnesses are located in Georgia and are American Tombow's employees. As a result, this factor is neutral.

As to the relative means factor, "[a] court may consider the relative means of the parties 'where [an economic] disparity between the parties exists.'" *Neil Bros.*, 425 F. Supp. 2d at 331. This often occurs when an individual files an action against a corporation. *Federman*, 1997 U.S. Dist. LEXIS 23685 at *11-12. Here, there is no indication that Modellbahn, a corporation, does not have the financial means to litigate in the Northern District of Georgia. Accordingly, this factor is neutral.

Likewise, the familiarity of the transferee court factor is accorded little weight because "federal courts are deemed capable of applying the law of other states." *Neil Bros.*, 425 F. Supp. 2d at 333. Here, Modellbahn's claims involve state law, which any federal court is capable of applying. Furthermore, should American Tombow file counterclaims in this action, they will involve federal trademark law and the state law of the forum. Thus, this factor is neutral.

### iv. Judicial economy and the interest of justice favor transfer to the Northern District of Georgia.

Based on the totality of the circumstances, the interest of justice favors transfer to the Northern District of Georgia. The Northern District of Georgia would be substantially more convenient for the anticipated witnesses in the case, as it is where American Tombow employees are located. It is also the location of the documents and evidence American Tombow intends to use both to defend against Modellbahn's claims and support its own counterclaims.

Particularly because this case is in such an early stage of litigation and discovery has not taken place, "transfer to [Georgia] would facilitate discovery in the district where the majority of witnesses reside, documents are located, and locus of operative facts took place." *Federman*, 1997 U.S. Dist. LEXIS 23685 at *13-14; *see also Neil Bros.*, 425 F. Supp. 2d at 334 (finding that,

because case was still in its early stages and minimal discovery had occurred, the "interests of justice based on the totality of the circumstances" factor favored transfer to the forum where the locus of operative facts occurred, most of the relevant documents were located, and some of the witnesses were located). Additionally, because the locus of operative facts occurred in Georgia, New York has little interest in the action. *See Federman*, 1997 U.S. Dist. LEXIS 23685 at *14. As a result, judicial economy and the interest of justice favor transfer to the Northern District of Georgia.

## IV.    CONCLUSION

For these reasons, American Tombow respectfully requests that this Court grant American Tombow's motion and dismiss the claims against American Tombow, including the time-barred defamation claims, or alternatively, sever American Tombow from this action and transfer the claims against it to the Northern District of Georgia.

Date: September 30, 2020

Michael Lee  (ML 6353)
Lee Law PLLC
579 Fifth Avenue, 14th Floor
New York, NY 10017
Telephone: (212) 621-8239
Email: michael@leelawservices.com
*Attorneys for Defendant American Tombow, Inc.*

Of Counsel:
William D. Kloss, Jr.  (OH Bar No. 0040854)
Martha Brewer Motley (OH Bar No. 0083788)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6360
Email:  wdklossjr@vorys.com
           mbmotley@vorys.com
*pro hac vice applications forthcoming*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the foregoing to be electronically filed with the Court using

CM/ECF, which will send notification of such filing to all counsel of record.


Date: September 30, 2020

Michael Lee